UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**TYRONE B. HENDERSON, SR**

**and**

**DUNYEL JAMAAL ROUNDTREE,**

**and**

**MARK WOODS,**
**on behalf of themselves and others**
**similarly situated,**

      **Plaintiffs,**

**v.**

      Civil Action No: 3: 13CVS78

**INFOMART, INC**

      **Defendant.**

## CLASS COMPLAINT

COMES NOW, the Plaintiffs, **TYRONE B. HENDERSON, SR., DUNYEL JAMAAL**

**ROUNDTREE** and **MARK WOODS**, on behalf of themselves and all similarly situated

individuals and for their Class Complaint, they state as follows:

### INTRODUCTION

1.     Tyrone B. Henderson, Sr. (hereinafter "Henderson"), Dunyel Jamaal Roundtree

(hereinafter "Roundtree") and Mark Woods (hereinafter "Woods) (collectively referred to as

"Plaintiffs") bring this class action against Defendant to obtain relief for themselves and the

classes they propose to represent for violations of the Federal Fair Credit Reporting Act (FCRA),

15 U.S.C. § 1681, *et seq.*

2.     Plaintiffs Henderson alleges a class claim under 15 U.S.C. § 1681g because Defendant did not provide to Henderson and other similarly situated consumers all of the documentation, information and statements required to be provided by 15 U.S.C. § 1681g(c)(2) with Defendant's written disclosure to Henderson pursuant to 15 U.S.C. § 1681g(a).

3.     15 U.S.C. § 1681g(c)(2) mandates that a consumer reporting agency provide to a consumer, with each written disclosure made in response to the consumer's file request pursuant to § 1681g(a), a) the FCRA summary of rights, b) a toll-free telephone number at which personnel of the agency are accessible to consumers during normal business hours, c) a list of all Federal agencies responsible for enforcing any FCRA provision and the address and any appropriate phone number for each such agency, d) a statement that the consumer may have additional rights under State law, and that the consumer may wish to contact a State or local consumer protection agency or State attorney general to learn of those rights, and e) a statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer, unless the information is outdated under section 1681c or cannot be verified.

4.     Plaintiff Roundtree alleges a class claim under 15 U.S.C. § 1681k because Defendant did not provide Plaintiff Roundtree and other similarly situated consumers timely and lawful notice that it was furnishing a report for employment purposes at the time it did so. This important requirement is intended to provide consumers immediate notice of the furnishing of the report and details necessary to preemptively contact the reporting agency to obtain and, as appropriate, correct information in the furnished report. It also was intended to alert the

consumer to the employer's use of the report to provide them the opportunity to address any concerns or derogatory history in the report directly with the user. Defendant's failure to comply with these long standing requirements denied Plaintiff Roundtree and each putative class member these important rights.

5.    Plaintiff Roundtree also alleges a class claim under 15 U.S.C. § 1681b(b)(3) because Defendant made an adverse employment decision as to Plaintiff Roundtree and other similarly situated consumers based in whole or in part on his consumer report without first providing to them a copy of their reports and s summary of their rights under the FCRA. This important requirement is intended to provide consumers the opportunity to contact the reporting agency to obtain and, as appropriate, correct information in the furnished report or to provide them the opportunity to address any concerns or derogatory history in the report directly with the user. Defendant's failure to comply with these long standing requirements denied Plaintiff Roundtree and each putative class member these important rights.

6.    Finally, Plaintiff Woods brings a class claim under 15 U.S.C. § 1681i. Plaintiff Woods disputed the inaccurate information in his report and the Defendant required him, in derogation of the requirements of the FCRA, to provide a copy of his driver's license to InfoMart before it would commence work on his dispute.

7.    The FCRA requires nothing more than that the consumer reporting agency conduct the required reinvestigation "if the completeness or accuracy of any item of information contained in the consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute… 15 U.S.C. § 1681i(a)(1)(A).

8.      There is nothing in the FCRA that requires a consumer also provide copies of a driver's license or other forms of government issued identification.

9.      Instead, the key is whether or not the consumer reporting agency could adequately identify who was making the dispute.

10.     Defendant could adequately identify  Plaintiff Woods as making the dispute without requiring a copy of his driver's license.

11.     Plaintiff Woods also alleges an individual claim under 15 U.S.C. § 1681e(b), which required that Defendant use "reasonable procedures to assure maximum possible accuracy" in the publication of his consumer report.  The background checks of Woods that Defendant sold was inaccurate.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendant regularly does business in the district and division.

13.     Plaintiff Henderson is a citizen of Richmond, Virginia and maintains all of the documents relevant to this dispute at his home in Richmond, Virginia.

14.     Plaintiff Roundtree is a citizen of Newport News, Virginia and maintains all of the documents relevant to this dispute at his home in Newport News, Virginia.

15.     Plaintiff Woods is a citizen of Jacksonville, Florida and maintains all of the documents relevant to this dispute at his home in Jacksonville, Florida.

16.     Defendant has contracted to supply services or things in the Commonwealth of Virginia.

17.     Defendant regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth of Virginia.

18.     Plaintiffs intend to serve Defendant through the Secretary of the Commonwealth.

## PARTIES

19.     Plaintiffs are natural persons and "consumers" as protected and governed by the FCRA.

20.     Defendant InfoMart is a privately owned Georgia corporation that was incorporated on October 20, 1993. It is not registered in Virginia.

21.     Nevertheless, it is serving a number of companies that do business in Virginia, including FedEx Ground, Cox Enterprises, and the PGA. It provides information to those companies about Virginia applicants to those companies, including Virginia public records that it researches in Virginia.

22.     InfoMart earns approximately $25 million per year and utilizes more than 1500 information retrievers throughout the country, including in Virginia.

23.     Defendant is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

24.     Defendant disburses consumer reports to third parties under contract for monetary compensation during the class period and currently.

25.     Defendant operates as a nationwide consumer reporting agency as governed by the FCRA.

## FACTS AS TO HENDERSON

26.     Plaintiff Henderson was rejected for a number of jobs due to an error in his consumer report.

27.     Henderson was concerned that InfoMart might have provided incorrect information to some of his prospective employers.

28.     On February 1, 2013, Plaintiff Henderson wrote InfoMart requesting that it provide him with a copy of his file, including all inquiries made to InfoMart.

29.     By letter dated February 13, 2013, InfoMart responded to Plaintiff Henderson's file request by disclosing that InfoMart had never performed a background check on him as of that date.

30.     The February 13, 2013 letter did not contain a written summary of rights prepared by the Bureau of Consumer Financial Protection, as required by FCRA § 1681g(c)(2)(A).

31.     The February 13, 2013 letter did not contain a list of all Federal agencies responsible for enforcing any provision of the FCRA, nor the address and any appropriate telephone number of each such agency, as required by FCRA § 1681g(c)(2)(C).

32.     The February 13, 2013 letter did not contain a statement that the consumer may have additional rights under state law, and that the consumer may wish to contact a State or local consumer protection agency or a State attorney general (or the equivalent thereof) to learn of those rights, as required by FCRA § 1681g(c)(2)(D),

33.     The February 13, 2013 letter did not contain a statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer, unless the information is outdated under § 1681c or cannot be verified, as required by

FCRA § 1681g(c)(2)(D).

## FACTS AS TO ROUNDTREE

34.    In August 2010 Roundtree applied for a job with WCC Cable.

35.    His interview was successful, and he actually worked for a few weeks for WCC Cable pending the receipt of his consumer report results.

36.    In connection with his application to WCC Cable, Roundtree may have authorized a background check to be obtained by Cox Enterprises, for whom WCC Cable operated as a sub-contractor.

37.    In mid-August 2012 InfoMart provided a consumer report to Cox Enterprises concerning Roundtree.

38.    The consumer report that InfoMart provided to Cox Enterprises concerning Roundtree contained derogatory public record information, including at least one criminal conviction and multiple traffic offenses,

39.    At the time that InfoMart provided Cox Enterprises with Roundtree's report, InfoMart had already adjudicated Roundtree ineligible for hire using criteria provided to it by Coc Enterprises.

40.    Indeed, the letter which purported to reject Plaintiff for employment with Cox Communications a/k/a/ Cox Enterprises, was on InfoMart letterhead and stated "we regret to inform you that we have found it necessary to reject you for assignment with Cox Communications and/or to perform work on Cox Communications property."

41.    The letter also referred to information in a consumer report "made, at our request, by InfoMart of Marietta, GA."

42.     Upon receipt of the InfoMart consumer report, Cox Enterprises demanded that WCC Cable discharge Roundtree based on the contents of the report.

43.     In response to Cox Enterprises's demands, WCC Cable did in fact discharge Roundtree based on the contents of the report.

44.     The InfoMart report was a "consumer report" as defined and governed by the FCRA.

45.     Despite providing a report for employment purposes (regarding Roundtree) containing public record information likely to have an adverse affect upon Roundtree's ability to obtain or maintain employment, Defendant failed to provide Plaintiff notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person(s) to whom such information was being reported.

46.     Roundtree never received a letter or any other communication sent by InfoMart "at the time" the InfoMart report was furnished to Cox Enterprises.

47.     On information and belief, Plaintiffs allege that Defendant did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court clerk) immediately before furnishing a report which includes such information.  Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

### FACTS AS TO WOODS

48.     In October 2011 Woods sought to volunteer at his daughter's elementary school as a chaperone on a school field trip.

49.     Woods may have authorized a consumer report, and InfoMart prepared a

consumer report, including a criminal background report.

50.     InfoMart provided a consumer report concerning Woods to Duval County Public Schools in October 2011.

51.     Woods provided his full name, date of birth and social security number on the form that the school system provided to InfoMart.

52.     The consumer report included several criminal matches from Illinois, a state where Plaintiff had never ventured.

53.     The criminal background report provided with regard to Woods actually included the criminal information for an individual with the same name and birth date, but different addresses, a different middle initial and a different physical appearance, among other discrepancies.

54.     Although Woods has never been charged with a criminal offense, his InfoMart consumer report claimed that he had been charged with misdemeanor domestic battery and found guilty of two counts of felony firearm possession.

55.     InfoMart refused to process Woods' dispute about the incorrect criminal record produced by InfoMart until Woods provided a copy of his driver's license to InfoMart.

56.     Defendant's failure to follow reasonable procedures to assure that its report regarding Woods did not include information regarding a different person caused him to be rejected for participation in the field trip until Woods prevailed upon the school to permit him to participate.

57.     In creating and furnishing Woods' consumer report, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible.

## WILLFULNESS

58.     Defendant knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

59.     Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

60.     Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs and other members of the class of their rights under the FCRA.

61.     Alternatively, Defendant acted in reckless disregard of the FCRA rights of Plaintiffs and members of the Classes they seek to represent.

62.     Plaintiffs allege that Defendant's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

63.     Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.

64.     In the alternative, the Defendant was negligent entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

65.     Defendant's failure to provide to the named Plaintiffs and the Class members with the responses to their file disclosure requests the FCRA summary of rights violated 15 U.S.C. § 1681g(c)(2)(A).

66.     Plaintiffs and other members of the putative class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant in an amount to be

determined by the Court pursuant to 15 U.S.C. § 1681n.

67.     As a result of these FCRA violations, Defendant is liable to each named Plaintiff and each respective class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys fees and costs pursuant to § 1681n.

## ALLEGATIONS COMMON TO EACH CLASS CLAIM

68.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

69.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. Without limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant provided with their responses to consumers' file requests the FCRA summary of rights, whether Defendant provided with their responses to consumers' file requests the FCRA summary of rights, whether it was required to do so, and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery of the FCRA Summary of Rights in all instances when responding to a consumer's file request. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. §1681n is a common question.

70.     **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiff Henderson's claims are typical of the claims of each Class member.  Plaintiff Henderson seeks only statutory and punitive

damages. In addition, Plaintiff Henderson is entitled to relief under the same causes of action as the other members of the Class.

71.    **Adequacy.** Plaintiff Henderson is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. FED. R. CIV. P. 23(a)(4). Plaintiff Henderson and his Counsel will fairly and adequately protect the interests of members of the Class.

72.    **Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

73.    **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate

equitable injunctive relief with respect to Plaintiff Henderson and the Class members. FED. R.

CIV. P. 23(b)(2).

## CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE FCRA § 1681g(c)(2)
### (CLASS CLAIM)

74.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set

forth at length herein.

75.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Henderson

brings this action for himself and on behalf of a class (the "1681g Class") initially defined as

follows:

> All natural persons residing in the United States (including all
> territories and other political subdivisions of the United States) (a.)
> who requested from InfoMart a copy of their file (b) where
> InfoMart failed to provide to such person with its written file
> disclosure response the FCRA summary of rights, (c) during the
> five year period before this Complaint was filed.  Excluded from
> the class definition are any employees, officers, directors of
> Defendant, any attorney appearing in this case, and any judge
> assigned to hear this action.

76.     Henderson mailed to InfoMart a written request for a copy of his file, including all

inquiries made to InfoMart.

77.     In Defendant's response it failed to include a written summary of rights.

78.     In addition, its cover letter neglected to include any of the rights enumerated in the

written summary of rights prepared by the Bureau for Financial Protection as required by FCRA

§ 1681g(c)(2)(A).

### COUNT II - VIOLATION OF THE FCRA § 1681k(a)(1)
### (CLASS CLAIM)

79.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

80.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Roundtree brings this action for himself and on behalf of a class (the "1681k Class") initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a report sold by InfoMart to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (d.) within five years next preceding the filing of this action and during its pendency, and (e.) to whom Defendant did not place in the United States mail postage pre-paid, on the day they furnished any part of the report, a written notice that they were furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

81.     InfoMart reported derogatory public information about Roundtree to Cox.

82.     By the time InfoMart provided Cox Enterprises with Roundtree's report, InfoMart had already adjudicated Roundtree as ineligible for hire.

83.     Indeed, Defendant already sent a letter dated and postmarked August 13, 2012 informing Roundtree that he was rejected for assignment with Cox Enterprises.

84.     Defendant never mailed Roundtree with the letter required by FCRA § 1681k.

## COUNT III - VIOLATION OF THE FCRA § 1681b(b)(3)
## (CLASS CLAIM)

85.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

86.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Roundtree brings this action for himself and on behalf of a class (the "1681b Class") initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of an InfoMart report for the purpose of a new employment application and (b) for whom, based in part on the contents of that report, InfoMart adversely adjudicated the "hire or do not hire"employment decision on behalf of the employer, (c) during the five year period before this Complaint was filed and continuing through the conclusion of this action. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

87.    The FCRA requires that any person "using a consumer report for employment purposes" who intends to take "an adverse action based in whole or in part on the report" must provide the consumer with a copy of the report on which the decision is based and a written description of the consumer's rights under the FCRA *before* taking such adverse action." 15 U.S.C. § 1681b(b)(3).

88.    In this context, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

89.    While InfoMart is undoubtedly a CRA and subject to FCRA strictures, by virtue of its agreements with users such as Cox Enterprises, it is also a "person" that regularly uses consumer reports to make adverse-action decisions on behalf of Cox Enterprises by comparing the consumer reports of Cox Enterprises applicants (or the applicants of Cox Enterprises'

contractors) to hiring criteria provided to InfoMart by Cox Enterprises and determining whether applicants meet those criteria.

90.     Applicants that do not meet Cox Enterprises' criteria are summarily denied employment by InfoMart, without Cox Enterprises (or Cox Enterprises' contractors) taking part in the decision.

91.     InfoMart then contacts Cox Enterprises to let it know that the applicant cannot be hired.

92.     When taking such adverse actions against Cox Enterprises' applicants (or the applicants of Cox Enterprises' contractors), however, InfoMart fails to first provide the applicants with the reports on which the decision is based or a summary of the applicant's FCRA rights.

93.     Since InfoMart is fully aware that it makes Cox Enterprises' hiring decisions and it is the only one with knowledge of the timing of the decision such that it alone can issue a proper 1681b(b)(3) notice *before* it takes an adverse action, InfoMart is also aware that no consumer against whom it makes an adverse action properly receiveds notice before the adverse-action decision is made.

94.     At best, InfoMart has negligently designed and operates a system in which it takes adverse employment actions against consumers without providing proper notice. At worst, its actions were willful.

95.     For these reasons, InfoMart has been willfully violating 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii) by taking adverse actions relating to pending employment applications *before* it sends to consumers pre-adverse action notices.

96.     Plaintiff Roundtree and members of this Class seek a classwide determination that

InfoMart willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii) and, following that

determination, the opportunity for individuals to obtain statutory and punitive damages.

## COUNT IV - VIOLATION OF THE FCRA § 1681i
### (CLASS ACTION)

97.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set

forth at length herein.

98.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Woods

brings this action for himself and on behalf of a class (the "1681i Class") initially defined as

follows:

> All natural persons residing in the United States (including all
> territories and other political subdivisions of the United States) (a.)
> who disputed the information in their consumer report with
> InfoMart where InfoMart required them to submit a driver's
> license, complete a specific form to submit their dispute on, or
> provide identification documents or a signature before it would
> investigate the dispute, during the five year period before this
> Complaint was filed.  Excluded from the class definition are any
> employees, officers, directors of Defendant, any attorney appearing
> in this case, and any judge assigned to hear this action.

99.     Defendant's requiring Class Members to submit a driver's license, complete a

specific form to submit their dispute on, or provide identification documents or a signature

before it would investigate the dispute violated 15 U.S.C. § 1681i as to the Plaintiff Woods and

other members of the Section 1681i class.

## COUNT V - FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (INDIVIDUAL CLAIM BY WOODS)

100.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set

forth at length herein.

101.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding Plaintiff Woods.

102.    As a result of this conduct by the Defendant, Plaintiff Woods suffered actual damages, including without limitation, by example only and as described herein on their behalf by counsel:  loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

WHEREFORE, Plaintiffs and the Class Members pray for relief as follows:

a.      That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

b.      That judgment be entered for Plaintiff Roundtree and Woods individually against Defendant for actual and/or statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o;

c.      That judgment be entered for the proposed classes against Defendant for statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681k(a), 1681g(c)(2) and 1681i pursuant to 15 U.S.C. § 1681n. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

d.      That the Court grants such other and further relief as may be just and

proper.

TRIAL BY JURY IS DEMANDED.

TYRONE B. HENDERSON, SR.,
DUNYEL J. ROUNDTREE and
MARK WOODS
**On behalf of themselves and others
similarly situated.**

By: _Anthony Colt Noth_

Of Counsel

_8/23/13_

Leonard Anthony Bennett
VSB# 37523
Attorney for Plaintiffs
Consumer Litigation Associates
763 J. Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@cox.net

Susan Mary Rotkis
VSB# 40693
Attorney for Plaintiffs
Consumer Litigation Associates
763 J. Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com

Dale W. Pittman
VSB#15673
Attorney for Plaintiffs
The Law Office of Dale W. Pittman, P.C.
The Eliza Spotswood House
112-A W. Tabb Street
Petersburg, VA 23803-3212



Telephone: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Christopher Colt North
VSB#16955
Attorney for Plaintiffs
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com