**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| TYRONE B. HENDERSON, DUNYEL JAMAAL ROUNDTREE, and MARK WOODS, on behalf of themselves and others similarly situated , | ) ) ) ) ) | Case No. 13-cv-578 Judge Payne |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| INFOMART, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA**

Defendant, InfoMart, Inc. ("InfoMart" or the "Company"), by its attorneys and pursuant to 28 U.S.C. § 1404(a), submits the following memorandum in support of its Motion to Transfer Venue to the United States District Court for the Northern District of Georgia, Atlanta Division.

## INTRODUCTION

In this purported class action, three named Plaintiffs bring suit under the Fair Credit Reporting Act ("FCRA") against InfoMart, a Georgia consumer reporting agency ("CRA") whose sole office is located in Marietta, Georgia. Plaintiffs seek to represent a nationwide class. Their claims allege that InfoMart violated the FCRA by failing to provide putative class members with requisite notices and disclosures, and by failing to comply with other specific statutory procedures.

This case belongs in the Northern District of Georgia. Although InfoMart denies Plaintiffs' allegations, any alleged FCRA violations could only have occurred through InfoMart employees and/or management, none of whom are in Virginia, but *all* of whom are based at

InfoMart's Marietta, Georgia headquarters, less than 20 miles from the federal courthouse in Atlanta.  Indeed, as set forth in greater detail in InfoMart's supporting declaration, given the nature of Plaintiffs' claims, the necessary witnesses in this case will be (a) InfoMart management, who are responsible for promulgating and implementing the FCRA policies and procedures challenged by Plaintiffs; and (b) those numerous non-Executive Team InfoMart employees who processed the putative class members' background screenings and disputes, and prepared correspondence and disclosures to putative class members.  *All* of these potential witnesses reside in the Atlanta, Georgia area.

Moreover, because InfoMart does a substantial portion of its business in and near Georgia, there are far more putative class members residing in Georgia as compared to Virginia. Although two of the named Plaintiffs live in Virginia (only one of whom resides in the Richmond division),[1] the putative class they purport to represent is spread across the country, with a disproportionate number residing in Georgia.  The third named Plaintiff lives in Jacksonville, Florida -- some 250 miles closer to Atlanta than to Richmond.  Thus, in addition to *all* necessary defense witnesses residing in Georgia, a significant percentage of the putative class also will be based in Georgia.  In short, the Northern District of Georgia is a far more convenient forum for the vast majority of witnesses and parties (including one of the named Plaintiffs).

Other relevant Section 1404 factors further support transferring this case to the Northern District of Georgia.  In particular, *all* of the documents relevant to Plaintiffs' claims are maintained at InfoMart's Marietta, Georgia headquarters.  Such documents are critical to the defense of this case, as this action centers around written policies, disclosures, consumer reports

---

[1] Contemporaneous to this Motion, InfoMart has filed its Motion to Dismiss Counts I, II and III of Plaintiffs' Complaint.  If granted, this motion will dispose of all the claims brought by Henderson and Roundtree, the two Virginia plaintiffs, and leave only Woods, the Florida plaintiff, remaining in the case.

and other written consumer-related information -- all of which is located in Marietta. Further, the interests of justice would best be served by transferring the case away from a forum with virtually no connection to Plaintiffs' claims, and to a forum where all key witnesses reside, and where all sources of proof are located. In addition, although this Court is known for expeditious litigation, Plaintiffs' filing here clearly has nothing to do with that reputation, given that they waited more than four months before serving InfoMart with a copy of their Complaint. Finally, Plaintiffs' counsel's obvious desire to remain in this Court is entirely irrelevant to the consideration of this motion.

In sum, the convenience of the parties and witnesses, along with the interests of justice, all weigh heavily in favor of transferring this case to the most appropriate and convenient forum: the Northern District of Georgia, Atlanta Division. For these reasons, the Court should grant InfoMart's motion.

### FACTS SUPPORTING TRANSFER

### I.    InfoMart's Business

InfoMart is a leading background screening company. (Decl. ¶ 4).[2]  Among its services, InfoMart provides its clients with applicant criminal histories, credit and driving records, and education and employment verifications. (*Id.*) The Company is a "consumer reporting agency" under the FCRA. (Compl. ¶ 23). InfoMart is headquartered, and has its only physical facilities, in Marietta, Georgia.[3]  (Compl. ¶ 20; Decl. ¶ 5). InfoMart is a Georgia corporation. (Compl. ¶ 20).

---

[2] The Declaration of Adam Townsend is attached as Exhibit A. Citations thereto appear as (Decl. ¶ __).

[3] The Court may take judicial notice that Marietta is within the Northern District of Georgia and less than 20 miles from the federal courthouse in Atlanta, Georgia.

16123237v.6

InfoMart has 106 employees. (Decl. ¶ 11). As many as 79 current InfoMart employees regularly assist with the preparation of consumer background screens and responding to consumer disputes and inquiries. (Decl. ¶ 13). With the exception of four employees,[4] InfoMart's employees all reside in Georgia, and work at InfoMart's Marietta offices. (Decl. ¶ 11). The Company does not employ anyone in Virginia. (Decl. ¶ 12). InfoMart's managerial employees all work and live in the Atlanta, Georgia area. (Decl. ¶ 14).

InfoMart conducts and oversees all applicant screening operations from its Marietta offices. (Decl. ¶ 13). InfoMart's Marietta, Georgia employees perform all FCRA-required procedures, including processing and responding to all consumer disputes and inquiries. (Decl. ¶ 13). The Company's Marietta-based management promulgates, implements and enforces all screening and other FCRA-related policies and procedures. (Decl. ¶ 14). In addition, InfoMart's Marietta office houses the Company's only computer servers, and are where the Company maintains all records relating to consumer disputes and inquiries, and all other information relating to its clients and those consumers on whom it conducts background screening operations. (Decl. ¶ 6).

A significant percentage of InfoMart's business is in Georgia and Florida, particularly when compared to its limited business interests in Virginia. Indeed, InfoMart's Georgia and Florida applicant screens consistently comprise 15-19% of their total business. (Decl. ¶¶ 8-9). In contrast, InfoMart has derived less than 4.8% of its total business from applicants in Virginia. (Decl. ¶ 10). In 2012, for example, 9.03% of InfoMart's business resulted from background screens on applicants residing in Georgia. (Decl. ¶ 8). That same year, only 2.9% of InfoMart's

---

[4] InfoMart has one employee in Alabama, one employee in Pennsylvania, and two employees in Florida. These employees work from home or on the road. None of these employees performed any work relating to the named Plaintiffs. (Decl. ¶ 11).

business resulted from screens of Virginia applicants.  (Decl. ¶ 10).  All background screens of Virginia applicants were conducted in Marietta, Georgia.  (*Id.*)  In addition, any dispute or inquiry from a Virginia applicant was processed in Marietta.  (*Id.*)

## II.    Plaintiffs And Their Allegations.

As alleged in the Complaint, the purported class members reside in all 50 states (and territories) of the United States, including Georgia.  (Compl. ¶¶ 75, 80, 86, 90).  Plaintiff Henderson lives in Richmond, Virginia.  (Compl. ¶ 13).  Plaintiff Roundtree lives in Newport News, Virginia.  (Compl. ¶ 14).  Plaintiff Woods resides in Jacksonville, Florida.  (Compl. ¶ 15).

Plaintiffs filed their Complaint on August 26, 2013.  (Dkt. No. 1).  InfoMart received the summons and Complaint on January 6, 2014.  (Dkt. No. 3).  The Complaint asserts five claims under the FCRA:

Henderson:    Plaintiff Henderson asserts one purported class claim against InfoMart.  In Count I, Henderson alleges that InfoMart violated Section 1681g(c)(2) of the FCRA by not providing him with a written summary of rights and other information after he requested a copy of his "file" from InfoMart.  (Compl. ¶¶ 75-78).

InfoMart employee Lisa McKay received Henderson's written request for his "file." (Decl. ¶ 16).  McKay is a Compliance Supervisor (a non-managerial position) who resides and works in Georgia.  (*Id.*)  From Marietta, Georgia, McKay responded to Henderson's request and informed him that InfoMart never conducted a background check on Henderson, and thus had no "file" concerning him.  (*Id.*)  InfoMart maintains all of the relevant documentation relating to Henderson (and any purported class member) at its Marietta headquarters.  (Decl. ¶¶ 6, 17).  Any other Count I class member would have written to InfoMart's Marietta headquarters, and would have received a response from an InfoMart employee who worked and resided in or near Marietta.  (*Id.*)  To determine whether InfoMart maintained any information or a file about a

- 5 -

consumer in response to a file disclosure request, the Georgia system would have been searched. (Decl. ¶ 17). The practices challenged in Count I were promulgated by InfoMart's Marietta management. (Decl. ¶ 14).

Roundtree:     Plaintiff Roundtree asserts two purported class claims against InfoMart. Roundtree was employed by a subcontractor for InfoMart client, Cox Enterprises. (Compl. ¶¶ 34-35, 37). As part of his employment, Roundtree authorized a background check to be performed by Cox. (Compl. ¶ 36). InfoMart subsequently provided Cox with a consumer report about Roundtree. (Compl. ¶ 37). The report included public record information showing that Roundtree had a prior criminal conviction and multiple traffic offenses. (Compl. ¶ 38). The Complaint alleges that, as a result of Roundtree's criminal record, Cox required the subcontractor to terminate Roundtree's employment. (Compl. ¶¶ 42-43).

In Count II, Roundtree alleges that InfoMart violated Section 1681k(a) by not notifying him that it was reporting public record information about him. (Compl. ¶¶ 80-84). In Count III, Roundtree alleges that InfoMart violated Section 1681b(b)(3) when it used Cox's hiring criteria to allegedly deny him employment before giving him notice of that action. (Compl. ¶¶ 86-96).

Seven InfoMart employees assisted in processing the background screen on Roundtree and preparing the consumer report sent to Cox. (Decl. ¶ 20). These employees are each not members of senior management - employees who reside in Georgia. (*Id.*) InfoMart maintains all of the relevant documentation relating to Roundtree (and any purported class member) at its Marietta headquarters. (Decl. ¶¶ 6, 21). Any other Count II or Count III class member's consumer report would have been processed and prepared by an InfoMart employee who worked and resided in or near Marietta. (*Id.*) Such employees would have been responsible for reviewing any public record information reported about purported class members. (Decl. ¶ 21).

Employees in Georgia also would have applied customer hiring/adjudication criteria. (Decl. ¶ 21).   In addition, Marietta employees would have been responsible for all correspondence relating to purported class members.   (*Id.*)   As alleged by Plaintiffs, the practices challenged in Counts II and III were promulgated by InfoMart's Marietta management.   (Decl. ¶ 14).

<u>Woods:</u>        Plaintiff Woods asserts one purported class claim and one individual claim against InfoMart.   In October 2011, Woods sought to volunteer during a field trip with his daughter's elementary school.   (Compl. ¶ 48).   InfoMart provided a consumer report about Woods to his daughter's Florida school district.   (Compl. ¶ 50).   InfoMart's report included criminal matches for another "Mark Woods" who had the same name and same birth date. (Compl. ¶¶ 51-53).   After Woods contacted InfoMart to dispute the report, InfoMart reinvestigated and amended the report.   (Decl. ¶ 22).   Woods participated in the field trip. (Compl. ¶ 56).

In Count IV, Woods alleges that InfoMart violated Section 1681i by requiring him and purported class members to submit their driver's license and/or other identifying information before investigating consumer disputes.   (Compl. ¶¶ 98-99).   In Count V, Woods alleges that InfoMart failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of his consumer report.   (Compl. ¶¶ 101-102).

Seven InfoMart employees assisted in preparing the initial consumer report, conducting the reinvestigation based on Woods' dispute of that report, and preparing an amended report. (Decl. ¶ 23).   These employees are each non-managerial employees who reside in Georgia.   (*Id.*) InfoMart maintains all of the relevant documentation relating to Woods (and any purported class member) at its Marietta headquarters.   (Decl. ¶¶ 6, 23).   Any other Count IV class member's consumer report would have been processed and prepared by an InfoMart employee who worked

and resided in or near Marietta. (Decl. ¶¶ 6, 24). Any dispute relating to a Count IV class member's consumer report would have been investigated by an InfoMart employee who worked and resided in or near Marietta. (Decl. ¶ 24). The practices challenged in Count IV were promulgated by InfoMart's Marietta management. (Decl. ¶ 14).

In total, 12 different InfoMart employees were directly involved in communicating with and/or processing background checks and disputes relating to the named Plaintiffs. (Decl. ¶¶ 16, 20, 23). As many as 79 current InfoMart employees were involved in communicating with and/or processing disputes and background checks concerning members of the putative class. (Decl. ¶ 25). InfoMart management promulgated the policies and procedures challenged in Plaintiffs' Complaint. (Decl. ¶ 14).

## ARGUMENT

**I.     The Court Has The Authority To Order A Transfer Of Venue To The Northern District Of Georgia.**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division in which it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404 is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted). Under Section 1404(a), district courts "have discretion . . . to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Byerson v. Equifax Information Servs., LLC*, 467 F. Supp. 2d 627, 631 (E.D. Va. 2006).

In exercising its discretion, the Court must determine "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp.

2d 627, 630 (E.D. Va. 2003). The "principal factors to consider are plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice." *Byerson*, 467 F. Supp. 2d at 631 (quoting *Samsung Elec. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005) (alterations omitted)).

Here, as explained below, the relevant Section 1404 factors *strongly* favor transfer to the Northern District of Georgia. This is particularly true given the nature of Plaintiffs' claims, which challenge FCRA policies and practices implemented and executed *entirely* in Georgia, by a Georgia corporation, and by Georgia employees. Indeed, several courts have granted transfer motions in similar FCRA cases, reasoning that "the situs of the material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business." *Smith v. Hireright Solutions, Inc.*, No. 09-6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010), *citing Bogollagama v. Equifax Info. Servs., LLC*, No. 09-1201, 2009 WL 4257910, at *3 (E.D. Pa. Nov. 30, 2009) (finding that operative facts in FCRA case arose in forum where reports were compiled and issued); *Klingensmith v. Paradise Shops, Inc.*, No. 07-322, 2007 WL 2071677, at **2-3 (W.D. Pa. July 17, 2007) (noting that an FCRA class action focuses on the conduct of defendant); *Barela v. Experian Info. Solutions, Inc.*, No. 04-5144, 2005 WL 770629, at *4 (N.D. Ill. April 4, 2005) (noting that assessment of relevant events and alleged harms in FCRA case points to the defendant's place of business as the appropriate venue).

Accordingly, this Court should exercise its considerable discretion and grant InfoMart's motion.

## II. Plaintiffs Could Have Filed This Action In The Northern District Of Georgia.

It cannot be disputed that Plaintiffs could have (indeed, *should* have) brought this action in the Northern District of Georgia. An action "might have been brought" in a transferee court if

"both venue and jurisdiction . . . is proper in the transferee district." *Koh*, 250 F. Supp. 2d at 630. As a Georgia corporation, the Northern District of Georgia has personal jurisdiction over InfoMart. Moreover, jurisdiction over a federal question is appropriate in any district court. Thus, personal and subject matter jurisdiction are present.

In addition, venue is proper in any jurisdiction in which a defendant resides. 28 U.S.C. § 1391(b). A corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). The Northern District of Georgia is an appropriate forum for this action.

## III. The Court Should Exercise Its Discretion And Transfer This Action To The Northern District Of Georgia, Which Is The Most Logical And Convenient Forum.

### A. Plaintiffs' Choice Of Forum Should Not Be Given Deference.

In balancing the relevant factors, Plaintiffs' decision to file in the Eastern District of Virginia carries almost no weight. In a class action, the "named plaintiffs' choice of forum is afforded little weight." *Byerson*, 467 F. Supp. 2d at 633. This is the case because of "the numerous potential plaintiffs, each [of whom are] possibly able to make a showing that [another] forum is best suited for the adjudication of the class' claim." *Id. See also Owner-Operator Ind. Drivers Assoc., Inc. v. North Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824 (W.D. Va. 2005) ("less deference is given to the plaintiff's choice of forum where that plaintiff represents a class").

In addition, "[a] plaintiff's choice of forum loses influence when the plaintiff chooses a forum with little relationship to the action." *Thomas v. Accounts Receivable Mgt., Inc.*, No. 10-cv-221, 2010 WL 4340108, at *2 (E.D. Va. Oct. 22, 2010). *See also Koh*, 250 F. Supp. 2d at 635 (where "there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial

contacts"). Relevant here, the "location of counsel for the litigant is not entitled to deference in a determination whether the Court should transfer venue." *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001).

Here, Plaintiffs seek to represent a nationwide class. With the putative class spread across the country and numerous federal districts, the fact that these Plaintiffs chose to file in the Richmond Division should have little, if any, weight in deciding the instant motion. Indeed, because InfoMart does significantly more business in Georgia than Virginia (*see* Decl. ¶¶ 7-10), the vast majority of putative class members likely will be located much closer to Atlanta than to Richmond. *See Hireright*, 2010 WL 2270541, at *6 (in FCRA class action, one named plaintiff's residence in chosen forum was not controlling given that other class members "could reside anywhere in the United States"); *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006) (transferring class action where "one percent" of putative class resided in transferor forum and "ten times as many" potential class members resided in transferee forum).

Moreover, the fact that just *one* of the three named Plaintiff resides within the Richmond Division demonstrates the tenuous relationship this case has to the Richmond Division. In contrast, InfoMart's *entire* business (including all relevant staff and business records) is located less than half an hour from the federal courthouse in Atlanta. What's more, the *only* place the alleged FCRA violations at issue could have occurred was in Marietta, Georgia.

Accordingly, Plaintiffs' choice of venue (and Plaintiffs' counsel's desire to only try cases before this Court) takes a back seat to the other "principal factors" discussed below.

**B.    The Northern District Of Georgia Is A Far More Convenient Forum For The Witnesses And Parties.**

"Witness convenience is often dispositive in transfer decisions." *Koh*, 250 F. Supp. at 636 (quoting *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 665 (E.D. Va. 1998)). As

explained below, this "often dispositive" factor weighs *heavily* in favor of transfer because (1) *all* of the (potentially dozens) of InfoMart witnesses reside in Georgia; and (2) on balance, the Northern District of Georgia is a far more convenient forum for the parties, including the disproportionate number of putative class members who reside in or near Georgia.

First, almost all the key witnesses in this case are Georgia-based InfoMart employees. Plaintiffs' Complaint alleges that InfoMart violated the FCRA by, among other things: (a) failing to provide purported class members with requisite FCRA file disclosures; (b) failing to inform purported class members that it was reporting information about them collected from public records; (c) failing to provide purported class members with proper notice of the results of background checks it conducted; and (d) requiring purported class members to submit identifying documentation before it would investigate a consumer dispute. Based on Plaintiffs' allegations, the key witnesses in this case are managerial and non-senior managerial employees of InfoMart who (a) promulgated and implemented InfoMart's FCRA policies and procedures; (b) processed background checks relating to putative class members; (c) processed and investigated disputes relating to putative class members; and (d) prepared correspondence and disclosures to putative class members.

In support of this motion, InfoMart has attached a declaration setting forth the anticipated testimony of at least twelve InfoMart witnesses. (Decl. ¶¶ 16, 20, 23). These witnesses have direct knowledge about the policies challenged by Plaintiffs and the interactions between the named Plaintiffs and InfoMart. (*Id.*) These witnesses also will certainly have information relevant to purported class members. (Decl. ¶¶ 17, 21, 24). As set forth in InfoMart's witness list, these witnesses' testimony will be critical to Plaintiffs' claims. (Decl. ¶¶ 14, 16, 17, 20, 21,

- 12 -

23, 24).   In addition to these witnesses, additional InfoMart employees have similar information about purported class members.  (Decl. ¶¶ 17, 21, 24, 25).

Critically, these witnesses *all* reside in the Atlanta area.  (Decl. ¶ 11).  Moreover, it was in Marietta where these witnesses performed *all* of the relevant background screenings and other actions relevant to the Complaint.  (Decl. ¶ 13).  These witnesses *all* work at InfoMart's Marietta offices.  (Decl. ¶ 11).  Only these Georgia-based witnesses have information about InfoMart's policies and how those policies were applied to putative class members.  (Decl. ¶¶ 11, 13, 14, 16, 17, 18, 20-25).

As noted above, FCRA cases routinely are transferred to other jurisdictions based on the convenience of the witnesses and related factors.  Indeed, unlike other cases, FCRA cases are uniquely suited to being transferred to the district in which "the defendant credit reporting agency conducted its business." *Hireright*, 2010 WL 2270541, at *4.

In *Hireright*, for example, the court transferred a purported FCRA class action from the Eastern District of Pennsylvania to the Northern District of Oklahoma where, as here, "all of the challenged consumer reports [in the lawsuit] originated from a singular source -- Defendant's place of business" in the transferee forum.  *Id.*  In turn, as is also the case here, the challenged processes and reports necessarily were "fulfilled in [Marietta] through computer systems and personnel there, and [correspondence] such as [that] referenced in the Complaint are prepared in [Marietta.]" *Id.*  The *Hireright* court also emphasized the following (all of which also are present here):

- Hireright "produced ample evidence to show that almost all relevant party witnesses would be located in [the transferee forum]" (*id.* at *5);

- Any "consumer disputing the accuracy of a file need[ed] to contact Defendant's call center in [the transferee forum]" (*id.*);

- "[A]ll consumer requests for background screening are submitted to and processed by employees in [the transferee forum] and notification letters are prepared in [the transferee forum]" (*id.*);

- All consumer "information is processed and stored in the [transferee forum] (*id.*);

- "In short, all employees who could testify regarding Defendant's challenged practices work in [the transferee forum]"

*Id.*

The same result was reached in *Bogollagama*, where the court transferred an individual plaintiff's FCRA action to the Northern District of Georgia, the principal place of business of defendant Equifax.  2009 WL 4257910.  As in *Hireright*, the *Bogollagama* court focused on the defendant's alleged FCRA violations necessarily taking place through its Atlanta office, and via its Atlanta employees. *Id.* at **3-4.  As the court recognized, "Equifax issues credit reports and other information from . . . Atlanta[;]" "[a]ny contact that Plaintiff made with Equifax . . . would have been received by Equifax in its Atlanta, Georgia facilities[;]" and "[a]ny credit file disclosures and responses to Plaintiff's disputes by Equifax would have been issued . . . from Equifax's Atlanta, Georgia location." *Id.* at *3.

In addition, for the most part, InfoMart's necessary witnesses are not high-ranking employees.  It would be unduly burdensome and costly for both the witnesses and InfoMart's business to require them to travel to Virginia for discovery and possible trial.  In contrast, there would be minimal disruption to the witnesses and InfoMart's business if this case was transferred to Atlanta, which is only a half-hour drive from InfoMart's headquarters and most of the witnesses' homes.

In short, the witnesses with the testimony most essential to the case all reside and work in the Atlanta area.  None live in Virginia.  Based on the "often dispositive" factor of witness convenience, this case should be transferred to the Northern District of Georgia. *Telepharmacy*

- 14 -

*Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741 (E.D. Va. 2003) (transferring case after finding sufficient proof of witness inconvenience based on showing that most of the individuals involved in alleged conduct worked and resided in transferee forum).

Second, transfer to the Northern District of Georgia would be significantly more convenient for Marietta-based InfoMart, while at the same time resulting in minimal inconvenience for the named Plaintiffs. Indeed, Plaintiff Woods, who has multiple claims, resides in Jacksonville, Florida, which is approximately 250 miles *closer* to Atlanta than to Richmond. Plaintiffs Henderson and Roundtree would only be minimally inconvenienced. Even assuming their claims proceed,[5] InfoMart's counsel would travel to Virginia to depose both Henderson and Roundtree, assuming their active participation in this case was even necessary.[6]

More importantly, however, Henderson and Roundtree are just two of potentially numerous putative class members. As explained above, InfoMart does a significantly higher percentage of business in Georgia and Florida, as compared to Virginia. (Decl. ¶ 7-10). Indeed, in 2012 (the last full year of the purported class), more than 18% of the applicants on which InfoMart performed background screens were residents of Georgia (9.03%) or Florida (9.21%). (Decl. ¶¶ 8-9). In total, in 2012, Infomart performed background screens on over 115,000 applicants from Georgia or Florida. In contrast, only 2.9% of InfoMart's business derived from Virginia-based applicants. (Decl. ¶ 10). Thus, a disproportionately large number of potential class members would be inconvenienced if this action were *not* transferred to Georgia. *See, e.g.*,

---

[5] Counts I, II and III fail to state viable claims. Contemporaneous to this motion, InfoMart filed its Motion to Dismiss Counts I, II and III of Plaintiffs' Complaint.

[6] Indeed, given the nature of their claims, Plaintiffs' active participation in this litigation is not even necessary. *See Hireright*, 2010 WL 2270541, at *6 (noting that where named plaintiffs sought "only statutory damages and not individual damages," and their claims -- including a Section 1681k(a) claim -- implicated only *Defendant's* policies and practices, Plaintiffs would not have to actively participate in the litigation, nor even testify).

*Jones*, 463 F. Supp. 2d at 275 (ordering transfer where "disproportionately larger share" of potential class members were located in transferee forum); *Owner-Operator*, 382 F. Supp. 2d at 825 (ordering transfer where "only one named plaintiff" resided in Virginia but putative class members resided throughout the country).

In sum, other than two named Plaintiffs, the vast majority of remaining witnesses and putative class members reside in or near the Northern District of Georgia. Indeed, *all* of the InfoMart witnesses live near Atlanta. There simply can be no dispute that it would be substantially more convenient for the overwhelming majority of witnesses and putative class members if this case were transferred to the Northern District of Georgia. This "often dispositive" factor weighs heavily in favor of transfer.

**C.      Virtually All "Sources Of Proof" Are Located In The Northern District Of Georgia, Further Supporting Transfer To That Venue.**

Although less important than witness and party convenience, another factor to consider in deciding a transfer motion is "ease of access to sources of proof." *Telepharmacy Solutions*, 238 F. Supp. 2d at 743. This factor favors transfer where the "majority of evidence relevant to the plaintiffs' cause of action" is located in the transferee forum. *Owner-Operator*, 382 F. Supp. 2d at 825. *See also Gibb v. Cox Media, LLC*, Case No. 3:10-cv-656 (E.D. Va. Nov. 8, 2010) (transferring case where majority of relevant documents were stored in defendant's offices in transferee forum). Relevant here, in a FCRA class action potentially involving "thousands of class members," "it is unreasonable to presume that the parties will manage to seamlessly share [written documentation] electronically." *Gomez v. Kroll Factual Data, Inc.*, No. 12-cv-2773, 2013 WL 639042, at *3 (D. Md. Feb. 20, 2013).

Here, *all* of the documents relevant to the allegations in Plaintiffs' Complaint are located at InfoMart's headquarters in the Northern District of Georgia. (Decl. ¶ 6). InfoMart conducts

all background screenings from its Marietta offices.  (Decl. ¶ 13).  Thus, all of the documents relating to each consumer (and potential class member) background screen are located in Marietta.  (Decl. ¶ 6).  Likewise, all consumer disputes are addressed and processed in Marietta.  (Decl. ¶ 13).  All of the documents related to these disputes are maintained in Marietta.  (Decl. ¶ 6).  In addition, all documents relating to InfoMart's FCRA-related policies and procedures are located in Marietta.  (Decl. ¶¶  6, 13).  Taken together, the sheer breadth of documentation stored in Marietta (and its importance to this case) strongly favors transfer to the Northern District of Georgia.  *See, e.g.*, *Gomez*, 2013 WL 639042, at **3-4 (notwithstanding electronic capabilities, finding that this factor "strongly" favored transfer to the defendant's home forum given the "extraordinary volume of documentation" in a FCRA class action); *Telepharmacy Solutions*, 238 F. Supp. at 743 (transferring case where relevant evidence was "most readily available" in transferee forum).

In contrast, Plaintiffs possess, at most, copies of their own records (in both Virginia and Florida).  The remainder of putative class records are maintained in Marietta.  As noted in *Gomez*, in a purported nationwide FCRA class action, there are potentially tens of thousands of relevant documents.  Indeed, Plaintiffs seek to represent everyone who had a dispute, who was subject to an InfoMart background check, or who even wrote InfoMart requesting information (even when no such information existed).  All of the FCRA violations at issue involve significant amounts of written materials.  *All* of these written materials are located at InfoMart's Marietta headquarters.

Accordingly, because most (if not all) of the relevant evidence in this case is located in Marietta, this factor also supports a transfer to the Northern District of Georgia.

**D.** **The Interests Of Justice Favor Transfer To The Northern District Of Georgia.**

The interests of justice also require that this case be transferred to the Northern District of Georgia. "In evaluating whether the interest of justice weighs in favor transfer, the court looks to the public interest factors aimed at systemic integrity and fairness," including "judicial economy and the avoidance of inconsistent judgments" and the "interest in having local controversies decided at home." *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 319 (E.D. Va. 2013). In considering "systemic integrity," the court "must also necessarily take account of a party's attempt to game the federal courts through forum manipulation." *Samsung*, 386 F. Supp. 2d at 721.

First and foremost, and based on Plaintiffs' own allegations, this is decidedly a *Georgia* controversy. Indeed, Plaintiffs chose to file in the Eastern District of Virginia despite their claims having almost no connection to the Richmond Division. As detailed above, all of the challenged FCRA policies and procedures were promulgated, implemented, and enforced in Marietta, Georgia and by Georgia witnesses.

Moreover, it is not in the interests of justice to allow Plaintiffs' naked "attempt to game the federal courts through forum manipulation." *Samsung*, 386 F. Supp. 2d at 721. Indeed, the only possibly credible reason for Plaintiffs' choice of forum is this Court's reputation for a "rocket docket." Docket considerations, however, "cannot be the primary reason for retaining a case in this district," as the "Court cannot stand as a willing repository for cases which have no real nexus to this district." *Telepharmacy Solutions*, 238 F. Supp. 2d at 744. Indeed, the "interests of justice are not served by such blatant forum shopping." *Id.* In any event, Plaintiffs cannot be heard to complain about transfer on this basis. They filed their Complaint in August 2013. Far from displaying a desire for expeditious litigation, Plaintiffs then delayed in even

- 18 -

attempting to serve their Complaint until late-December.  InfoMart was not served with the Complaint until January 2014.  (Dkt. No. 3).

Finally, Plaintiffs' counsel's obvious preference for this Court does not control.  The "location of counsel for the litigant is not entitled to deference in a determination whether the Court should transfer venue."  *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001).  Plaintiffs' counsel has made frequent habit of filing nationwide FCRA class actions in this District (and directing such actions to this Court) with (as here) only the most tenuous connection to the Richmond Division.  Now is the time for this practice to be reined in given the myriad of factors that support transfer.[7]

## CONCLUSION

For the foregoing reasons, InfoMart respectfully requests that this Court enter an Order granting its motion and transferring this action to the United States District Court for the Northern District of Georgia.

Respectfully submitted,

INFOMART, INC.

By:   /s/ Taron K. Murakami
Taron K. Murakami  (VSB # 71307)
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
(202) 463-2400
(202) 828-5393 (facsimile)
tmurakami@seyfarth.com

Pamela Q. Devata (admitted *pro hac vice*)
John W. Drury (admitted *pro hac vice*)
SEYFARTH SHAW LLP

---

[7] The other "interests of justice" factors are not relevant, as there is no risk of inconsistent judgments, both courts are presumed to be equally knowledgeable about federal law, and there are no potential conflicts of law.  *See generally Bluestone*, 940 F. Supp. 2d at 320 (listing other potential considerations relating to the "interests of justice").

16123237v.6

131 South Dearborn Street, Suite 2400
Chicago, Illinois  60603-5577
(312) 460-5000
(312) 460-7000 (facsimile)
pdevata@seyfarth.com
jdrury@seyfarth.com

*Attorneys for Defendant InfoMart, Inc.*

Dated: February 27, 2014

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on February 27, 2014, she caused a copy

of **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE**

**TO THE NORTHERN DISTRICT OF GEORGIA** to be electronically filed with the Court's CM/ECF

system, which will send notification of such filing to the following:

> Christopher Colt North
> 751-A Thimble Shoals Blvd.
> Newport News, VA 23606
> cnorthlaw@aol.com
>
> Dale Pittman
> The Law Office of Dale W. Pittman, P.C.
> 112-A W. Tabb Street
> Petersburg, VA  23803-3212
> dale@pittmanlawoffice.com
>
> Leonard A. Bennett
> Susan Mary Rotkis
> Consumer Litigation Associates, P.C.
> 12515 Warwick Boulevard, Suite 100
> Newport News, Virginia  23606
> lenbennett@clalegal.com
> srotkis@clalegal.com
>
> *Counsel for Plaintiff*
>
>
>                    /s/ Taron K. Murakami
> _____
>       Taron K. Murakami
>       VSB #71307
>       SEYFARTH SHAW LLP
>       975 F Street, N.W.
>       Washington, DC 20004
>       (202) 463-2400
>       (202) 828-5393 (facsimile)
>       tmurakami@seyfarth.com
>
>       *Attorneys for Defendant InfoMart, Inc.*

21